IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| GERALD BARBER, | ) |
| Petitioner, | ) |
| v. | ) CIVIL ACTION NO. 1:19-00489 |
| WARDEN C. MARUKA, | ) |
| Respondent. | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Petitioner's Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241 (Document No. 1), filed on July 1, 2019.[1] By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

## PROCEDURE AND FACTS

On May 6, 2016, Petitioner was sentenced in the Circuit Court of Marengo County, Alabama, to a 96-month term of imprisonment (Case No. CC-2015-000113.00). (Document No. 10-1, p. 7.) Petitioner escaped from Marengo Community Corrections on February 23, 2017. (Id., p. 9.) On March 11, 2017, Petitioner was arrested by State authorities in Wilcox County, Alabama, for Possession of a Controlled Substance. (Id., pp. 11 – 17, 22 - 23.) Petitioner misrepresented his identity to State authorities by identifying himself as Jason Barber (Petitioner's nephew) and

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

providing Jason Barber's social security number. (Id.) Thus, Petitioner was booked by State authorities under the alias of Jason Barber and released on bond on March 13, 2017. (Id., p. 11.) On March 14, 2017, Jason Barber filed an "Alabama Uniform Incident/Offense Report for Identity Theft" indicating that "his Uncle Gerald Barber used his identity and was arrested by [the] Camden Police Department. Mr. Barber was notified by a relative that his Uncle had used his social security number and was arrested on March 11, 2017." (Id., pp. 19 – 20.) State authorities completed an updated Alabama Uniform Arrest Report to include charges of False Report/False Information. (Id., pp. 22 – 23.) Also on March 14, 2017, the District Court of Wilcox County issued arrest warrants for Petitioner for Identity Theft, Possession of a Controlled Substance, and Giving a False Name. (Id., pp. 25 – 30.) On April 12, 2017, Petitioner was arrested by State authorities for Trafficking Cocaine and held in custody at the Perry County Sherriff's Office until May 24, 2017. (Id., pp. 32 – 33.) On May 24, 2017, Petitioner was released to the Wilcox County Sheriff's Department. (Id., p. 32.) Petitioner was held at the Wilcox County Sherrif's Department until May 31, 2017, when Petitioner was released to the custody of the Marengo County Sheriff's Department. (Id., p. 35.)

On June 8, 2017, the Circuit Court of Marengo County issued an "Order of Revocation of Community Corrections" and imposed an 8-year term of imprisonment (Case No. CC-2015-000113.00). (Id., p. 37.) State authorities began running Petitioner's 8-year term of imprisonment on April 12, 2017, the date Petitioner was recaptured. (Id., p. 9.) It was determined that Petitioner had 48-days of "dead time" for the time he was on escape status (February 23, 2017 – April 11, 2017). (Id., p. 39.) On August 31, 2017, Petitioner was indicted in the United States District Court for the Southern District of Alabama for Possession with Intent to Manufacture/Distribute Crack Cocaine. (Id., pp. 41 – 43.) On September 6, 2017, Petitioner was borrowed pursuant to a Federal

Writ of *Habeas Corpus Ad Prosequendum* from the State of Alabama. (Id., p. 46.) On April 23, 2018, Petitioner was sentenced in the Southern District of Alabama to a 120-month term of incarceration to run concurrent with any yet to be imposed State sentences related to this case. (Id., pp. 49 – 57.) On April 24, 2018, Petitioner was paroled from his 8-year State sentence. (Id., p. 9.) On April 30, 2018, the District Court of Wilcox County dismissed the charges against Petitioner for Possession of a Controlled Substance, Giving a False Name, and Identity Theft. (Id., p. 59.) Since there was still a pending charge for Trafficking Cocaine in the Circuit Court of Perry County, Alabama, Petitioner was returned to State custody on July 27, 2018. (Id., p. 46.) On October 3, 2018, the Circuit Court of Marengo County issued an Order directing Petitioner to serve the remainder of his sentence (Case No. CC-2015-000113.00) with the Alabama Department of Probation and Parole, to run concurrently with Case No. CC-2018-11 in Perry County, Alabama. (Id., p. 61.) Petitioner was released from State custody to the Federal detainer on October 15, 2018. (Id., pp. 45 – 47.) On November 29, 2018, the Circuit Court of Perry County dismissed the pending charges against Petitioner in Case No. CC-2018-11. (Id., p. 63.) The Bureau of Prisons ("BOP") is computing Petitioner's sentencing as commencing on April 23, 2018 (the date his Federal sentence was imposed). (Id., pp. 65 – 67.) The BOP has also granted Petitioner three days of prior custody credit for March 11, 2017 until March 13, 2017 (the period of time Petitioner was arrested and held on new State charges under the alias Jason Barber). (Id.)

On July 1, 2019, Petitioner filed his Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241. (Document No. 1.) Petitioner alleges that the BOP is improperly calculating the term of his imprisonment. (Id.) Specifically, Petitioner appears to contend that the BOP is improperly denying him Federal credit for the time he served in federal custody. (Id.) Petitioner states that he was "charged with trafficking crack cocaine" by State

3

authorities on April 12, 2017. (Id.) Petitioner explains that he "made bond from the Perry County Jail in Perry County, Alabama" in May 2017. (Id.) Petitioner, however, alleges that his probation was revoked on June 6, 2017, and a "hold" was placed on him by Marengo County. (Id.) Petitioner explains that he was indicted in the United States District Court for the Southern District of Alabama on August 31, 2017. (Id.) Petitioner alleges that he went into "federal custody on a writ" on September 6, 2017, "where [he] remained the entire time until [he] was sentenced on April 23, 2018." (Id.) Petitioner acknowledges that he was "transferred back to Marengo County Courthouse [on October 10, 2017], where the Honorable Judge Eddie Hardaway Jr. reinstated [Petitioner's] probation." (Id.) Petitioner asserts that he was returned to Federal custody the same day. (Id.) Petitioner acknowledges that he was convicted on his Federal charges on January 24, 2018, and he was sentenced to 120 months on April 23, 2018. (Id.) Petitioner, however, complains that the BOP is only giving him credit from April 23, 2018. (Id.) Petitioner argues that he is entitled to credit from the day he was indicted on the Federal charges (August 31, 2017).

By Order entered on August 9, 2019, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 7.) On September 3, 2019, Respondent filed his Response to the Order to Show Cause. (Document No. 10.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) "Petitioner failed to exhaust his administrative remedies" (Id., p. 5.); (2) "Petitioner's federal sentence commenced on April 23, 2018" (Id., pp. 6 – 9.); and (3) "Petitioner is not entitled to any additional prior custody credit" (Id., pp. 9 – 10.).

In support, Respondent attaches the following Exhibits: (1) The Declaration of Jan Stopps, Correctional Programs Specialist (Id., pp. 2 – 5.); (2) A copy of Petitioner's Sentencing Order as

filed in the Circuit Court of Marengo County, Alabama, in Case No. CC-2015-000113.00 on May 6, 2016 (Id., p. 7.; (3) A copy of Petitioner's Alabama DOC Classification Inmate Summary (Id., p. 9.); (4) A copy of Petitioner's Booking Detail for March 11, 2017 (Id., p. 11.); (5) A copy of the Alabama Uniform Arrest Report (1) concerning March 11, 2017 (Id., pp. 13 - 14.); (6) A copy of the Alabama Uniform Arrest Report (2) concerning March 11, 2017 (Id., pp. 16 – 17.); (7) A copy of the Alabama Uniform Arrest Report concerning March 14, 2017 (Id., pp. 19 – 21.); (8) A copy of the Alabama Uniform Arrest Report (3) concerning March 11, 2017 (Id., pp. 22 – 23.); (9) A copy of Petitioner's Arrest Warrants as issued in Wilcox County, Alabama, concerning the charges of Identity Theft, Possession of a Controlled Substance, and Giving a False Name (Id., pp. 25 – 30.); (10) A copy of Petitioner's Arrest and Placement Information concerning Perry County, Alabama (Id., pp. 32 – 33.); (11) A copy of Petitioner's Booking Information (Id., p. 35.); (12) A copy of the "Order of Revocation of Community Corrections" as entered by the Circuit Court of Marengo County entered on June 8, 2017 (Id., p. 37.); (13) A copy of Petitioner's "Sentencing Monitoring Independent Sentence Computation" dated August 22, 2019 (Id., p. 39.); (14) A copy of Petitioner's Indictment as filed in the United States District Court for the Southern District of Alabama in Case No. 17-189 on August 31, 2017 (Id., pp. 41 – 43.); (15) A copy of USMS Form 129 (Id., pp. 45 – 47.); (16) A copy of Petitioner's Judgment as filed in Southern District of Alabama in Case No. 17-189 on April 25, 2018 (Id., pp. 49 – 57.); (17) A copy of an Order entered by the District Court of Wilcox, County, Alabama, dismissing criminal charges against Petitioner on April 30, 2018 (Id., p. 59.); (18) A copy of an Order entered by Circuit Court of Marengo County, Alabama, granting Petitioner's Motion for Reinstatement of Community Corrections Sentence (probation) on October 3, 2018 (Id., p. 61.); (19) A copy of an Order entered by the Circuit Court of Perry County, Alabama, dismissing charges against Petitioner on November 29,

5

2018 (Id., p. 63.); (20) A copy of Petitioner's "Public Information Inmate Data as of 08-22-2019" (Id., pp. 65 – 67.) and (21) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" (Id., p. 69.).

By Order and Notice entered on September 5, 2019, the undersigned advised Petitioner of his right to file a Reply to Respondent's Response. (Document 11.) On September 27, 2019, Petitioner filed his Reply. (Document No. 12.) First, Petitioner argues that he never escaped nor has he ever been convicted of escape. (Id.) Second, Petitioner continues to argue that he was in Federal custody from September 6, 2017, until April 23, 2018. (Id.) Petitioner contends that he was a "free man" on October 10, 2017, when the Circuit Court of Marengo County, Alabama Court reinstated his probation. (Id.) Petitioner argues he was not in State custody because he was housed at a Federal facility. (Id.)

On August 5, 2020, Petitioner filed his Supplemental Response. (Document No. 13.) Petitioner argues he is entitled to Federal custody from September 6, 2017 (the date he was "picked up" on a writ by the Federal Government) until April 23, 2018 (the date of his Federal sentence). (Id.) Petitioner claims that "[w]hen the U.S. Marshall had [Petitioner] in custody, his State time stopped and his Federal time started." (Id.) Thus, Petitioner asserts he is entitled to credit starting September 6, 2017. (Id.)

## ANALYSIS

1.  **Failure to Exhaust:**

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001));

Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of

the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Respondent argues that Petitioner's Section 2241 Petition should be denied because Petitioner did not exhaust his administrative remedies. (Document No. 10, p. 5.) In support, Respondent submits the Declaration of Declaration of Jan Stopps, Correctional Programs Specialist for the BOP. (Document No. 10-1, pp. 2 - 5.) Ms. Stopps declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Specifically, Ms. Stopps states that "[a] review of SENTRY shows Petitioner has never filed an administrative remedy while in BOP custody." (Id., p. 4.) As an Exhibit, Ms. Stopps attaches a copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated August 15, 2019. (Id., 50 - 58.) Petitioner failed to address the above issue in his Responses. (Document Nos. 12 and 13.)

Based upon a review of the record, the undersigned finds that Petitioner failed to fully

exhaust his available administrative remedies. Petitioner does not dispute the validity of the information contained in Ms. Stopp's Declaration. The undisputed record reveals that Petitioner never filed an administrative remedy with respect to his claim in this matter. Since Petitioner failed to properly exhaust administrative remedies, the undersigned concludes, and hereby respectfully recommends, that this matter should be dismissed. Notwithstanding Petitioner's failure to exhaust, the undersigned will briefly consider the merits of his claims.

2.      **Petitioner's Federal sentence did not commence until April 23, 2018.**

Title 18 U.S.C. § 3585(a) provides that a Federal sentence does not begin to run until the defendant is received into custody for service of the sentence. Generally, the first arresting sovereign acquires primary jurisdiction "for purposes of trial, sentencing, and incarceration. However, the sovereign with priority of jurisdiction . . . may elect under the doctrine of comity to relinquish it to another sovereign." United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980). Primary jurisdiction can be relinquished by operation of law, such as bail release, expiration of sentence, or dismissal of charges. United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005). Primary jurisdiction is not relinquished when an inmate is borrowed pursuant to a writ of *habeas corpus ad prosequendum*. United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998)(citing Thomas v. Whalen, 962 F.2d 358, 361, n. 3 (4th Cir. 1992)("A federal sentence does not begin to run . . . when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.").

Alabama State authorities arrested Petitioner on April 12, 2017, thereby obtaining primary jurisdiction. Petitioner was then temporarily transferred into Federal custody on September 6,

2017, pursuant to a Writ of *Habeas Corpus ad Prosequendum* for proceedings upon his Federal charges. See Grier v. Purdue, 2014 WL 3823999, * 3 (N.D.W.Va. Aug. 4, 2014)(citing United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005)(A sovereign may relinquish primary jurisdiction by "releasing a defendant on parole, granting bail, or dismissing pending charges.") The United States District Court for the Southern District of Alabama imposed Petitioner's Federal sentence on April 23, 2018. Thus, Petitioner's Federal sentence could not commence prior to the date of its imposition on April 23, 2018. See United States v. LaBeilla-Soto, 163 F.3d 93, 98 (2nd Cir. 1998)(finding that "the district court had no authority to grant defendant sentencing credit for time he spent in federal custody before sentencing"); United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)(stating that a federal sentence "cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served"). Although Petitioner's Federal sentence was imposed on April 23, 2018, Alabama State authorities did not relinquish primary jurisdiction until Petitioner was released from State custody to the Federal detainer on October 15, 2018.

Upon special circumstances, the Attorney General or the BOP may enter a nunc pro tunc designation allowing a Federal sentence to begin to run while an inmate is in State custody. See 18 U.S.C. § 3621(b); Evans, supra, 159 F.3d at 911-12(finding that a federal sentence may commence while an inmate is in state custody "if and when the Attorney General or the Bureau of Prisons agree to designate the state facility for service of that federal sentence"). In the instant case, the United States District Court for the Southern District of Alabama ordered that Petitioner's Federal sentence was to "run concurrently to any yet imposed state sentence related to this case." (Document No. 10-1, pp. 49 – 57.) Although Petitioner remained in State custody until October 15, 2018, the BOP made a nunc pro tunc designation by deeming Petitioner's Federal sentence to

have commenced on the date of its imposition (April 23, 2018). The BOP, however, can only appropriately make a nunc pro tunc designation by deeming Petitioner's Federal sentence to have commenced on the date of its imposition. Thus, the BOP cannot make a nunc pro tunc designation commencing a prisoner's Federal sentence before the date of imposition of the sentence. Therefore, Petitioner's Federal sentence did not commence until April 23, 2018, when Petitioner's Federal sentence was imposed.

3. **Petitioner is not entitled to additional prior custody credit.**

Title 18 U.S.C. § 3585(b) provides as follows:

**(b) Credit for prior custody. --** A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences - -

**(1)** as a result of the offense for which the sentence was imposed; or

**(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not be credited against another sentence.

The United States Supreme Court has held that under Section 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, 503 U.S. at 337, 112 S.Ct. at 1355 - 1356; also see United States v. Mojabi, 161 F.Supp.2d 33, 36 (D.Mass. 2001)(holding that "[s]ection 3885(b) prohibits 'double credit,' i.e. awarding credit for presentence time served against one sentence if that time has already been credited against another sentence").

In the instant case, the Court finds that Petitioner is not entitled to receive *additional* prior custody credit. Petitioner is seeking Federal credit for time served in State custody following his Federal indictment (August 31, 2017) through April 22, 2018 (the date prior to the imposition of his Federal sentence). The record reveals that the BOP **has** granted Petitioner prior custody credit

11

for March 11, 2017 through March 13, 2017 (the period Petitioner was arrested and held on new state charges under an alias), which totaled 3 days. (Document No. 10-1, p. 66.) The record reveals that Petitioner received credit towards his State sentence for the time period of April 12, 2017 (date of his State arrest) through April 24, 2018 (date his State parole was granted). The BOP may not grant prior custody credit for time that has been credited against another sentence. See United States v. Goulden, 54 F.3d 774 (4th Cir. 1995)(unpublished opinion)(holding that credit is only available for time spent in custody which has not been credited against another sentence); United States v. Brown, 977 F.2d 574 (4th Cir. 1992)(finding that "a defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence"). Based on the foregoing, the undersigned finds that Petitioner is not entitled to any additional prior custody credit.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241 (Document No. 1), and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written

objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: March 8, 2022.

Omar J. Aboulhosn
United States Magistrate Judge